IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | | |
|---|---|---|
| 4DEMAND, LLC, MONICA J. BRESLOW, and ROBERT BRESLOW, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Case No. 20- _____ |
| G4S SECURE SOLUTIONS, INC., | ) ) | Related Action: Case No. 17-CV-04185 |
| Respondent. | ) | (N.D. Illinois) |

**PETITIONERS' MOTION TO COMPEL COMPLIANCE
WITH SUBPOENA TO PRODUCE DOCUMENTS BY RESPONDENT
G4S SECURE SOLUTIONS, INC. AND INCORPORATED MEMORANDUM OF LAW**

NOW COME Petitioners, 4Demand, LLC ("4Demand"), Monica J. Breslow, and Robert Breslow ("Breslows" and, together, "Petitioners"), and for their Motion to Compel Compliance with Subpoena to Produce Documents by Respondent G4S Secure Solutions, Inc. ("G4S") and Incorporated Memorandum of Law ("Motion to Compel"), state as follows:

## INTRODUCTION

Petitioners bring this action as a Motion to Compel against G4S under Federal Rule of Civil Procedure ("Rule") 45. In a related action styled *Shelliene D. Crandall v. 4Demand, LLC, Monica J. Breslow, and Robert Breslow*, Case No. 17-CV-04185, pending in the United States District Court for the Northern District of Illinois ("Crandall Matter"), Petitioners issued a subpoena for documents to G4S. Although G4S produced some documents in response to the subpoena, G4S objected to producing certain categories of documents. Petitioners' counsel conferred in good faith with G4S's counsel regarding G4S's objections but to no avail. Petitioners even amended their outstanding document requests by limiting the requests into a single, simplified document request but again to no avail. G4S's communication (or lack thereof)

has made it clear that Petitioners' only avenue for relief is through court intervention. Accordingly, Petitioners move this Court to compel G4S to comply with the subpoena and to produce documents as described more fully below.

## BACKGROUND

### A. The Crandall Matter.

The following background of the Crandall Matter is provided to apprise this Court of the operative facts and issues involved in this Motion to Compel. The Breslows and Shelliene D. Crandall ("Crandall") first met in February 2016 and soon after started a business relationship around consulting. Initially, Crandall signed a confidentiality agreement to review the Breslows' existing cash operations and dispatch headquarters. The parties then decided to start a more formal business relationship that would operate in the cash management industry. In March 2016, the Breslows formed 4Demand, LLC, and Crandall officially joined 4Demand in April 2016 after negotiating and signing an employment agreement with 4Demand that contained, among other provisions, restrictive covenants on competing and sharing confidential information. Crandall was named Chief Operating Officer of 4Demand and her employment agreement outlined her duties as an officer of 4Demand.

Between April 2016 and September 2016, Crandall, the Breslows, and other individuals attempted to move the 4Demand business forward, develop a successful business model, and grow a list of clients. The only line of business that ever generated any revenue for 4Demand was consulting. Other aspects of 4Demand's intended business did not develop as the parties had intended for various reasons. Over time, Petitioners contend that due to Crandall's actions and refusal to work with or cooperate with the Breslows and the other 4Demand managers, the relationship among the parties soured and 4Demand's business opportunities were lost due to

Crandall's conduct. Subsequently, on September 30, 2016, 4Demand terminated Crandall's employment for cause under her employment agreement. In the termination letter, 4Demand identified a series of actions and failures by Crandall in her job duties as Chief Operating Officer that 4Demand alleged constituted "for cause" reasons to terminate Crandall's employment.

Crandall disputed these allegations and sued Petitioners in Illinois state court for breach of contract (against 4Demand) and breach of fiduciary duty (against the Breslows) based on Petitioners allegedly improperly terminating Crandall's employment. On June 2, 2017, Petitioners (as defendants) removed Crandall's complaint to the Northern District of Illinois. *See* Crandall Matter, Dkt. 1. Subsequently, on June 7, 2017, 4Demand filed its answer, affirmative defenses, and counterclaims. *Id.*, Dkt. 13. On January 12, 2018, the Breslows filed their answer, affirmative defenses, and counterclaim. *Id.*, Dkt. 37. Petitioners asserted counterclaims against Crandall for breach of contract based on provisions in Crandall's employment agreement, breach of fiduciary duty, tortious interference, and conversion.

The parties remain at issue in the Crandall Matter. On February 28, 2020, the Breslows filed a motion for summary judgment as to Crandall's breach of fiduciary duty claim against them. That motion is still pending with briefing being delayed due to coronavirus-related concerns.

**B. Petitioners' Subpoena to G4S.**

Both during the relevant time period in 2016 and during discovery in the Crandall Matter, Petitioners became aware of important facts surrounding Crandall's relationship with G4S. More specifically, Petitioners became aware of the following:

- Around the time the Breslows first met Crandall in February 2016 and prior to Crandall formally joining 4Demand in April 2016 (when she signed her employment agreement),

the Breslows had reason to believe Crandall had a potential job opportunity with G4S and had communications with G4S around that time about potential employment or consulting opportunities with G4S;

- G4S had shown interest in being a 4Demand client while Crandall was employed by 4Demand, and Crandall was their point of contact. The opportunity to work with G4S never materialized. Neither the Breslows nor any other individuals working for 4Demand at the time knew what happened to G4S's interest and were unable to obtain this information from Crandall;

- The Breslows learned that Crandall had taken at least one confidential trip to Florida while employed by 4Demand. The Breslows believed at the time, based on the evidence then available, that Crandall took this trip, or additional trips, either to set up consulting opportunities for herself with G4S at the exclusion of 4Demand and/or to set up her future employment with G4S while still employed with 4Demand (either of which would violate her 4Demand employment agreement);

- G4S may have had some role in a consulting project that Crandall performed on behalf of 4Demand;

- G4S employed Crandall in April 2017 after 4Demand terminated Crandall's employment;

- Crandall may have shared 4Demand work product or other proprietary, confidential information of the Breslows with G4S; and

- G4S may be currently utilizing 4Demand work product or other proprietary, confidential information brought by Crandall.

Based on the above information Petitioners learned, Petitioners deduced G4S likely has information and documents relevant to Petitioners' claims and defenses. Therefore, on April 19,

2018, Petitioners served on G4S a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action along with a rider containing requests for documents (together "Subpoena"). A true and correct copy of the Subpoena is attached as Exhibit 1. Of particular importance to Petitioners, request no. 1 sought "[a]ll documents referring or relating to conversations or communications between G4S and Crandall related to Crandall's employment with G4S or any point of sale to bank cash flow operation or solution from the point of sale to a bank suggested by Crandall." *Id.* On May 18, 2018, G4S, through counsel, served on Petitioners a document production and objections and responses to the Subpoena. A true and correct copy of G4S's objections and responses are attached as Exhibit 2. The document production consisted of documents evidencing Crandall's employment and onboarding with G4S with her formal hire date shown as April 14, 2017, with the title Senior Vice President of Product Development. However, G4S objected to request no. 1 on numerous grounds and did not produce any documents responsive to request no. 1. *Id.*

Afterwards, discovery in the Crandall Matter was delayed for many reasons shared by all parties, and the parties proceeded with depositions starting with Crandall's deposition in August 2019. In Crandall's deposition, Petitioners learned that Crandall began performing consulting work for G4S as early as November 2016, closely following 4Demand's termination of Crandall's employment on September 30, 2016. Although Petitioners had gathered from G4S's prior document production that G4S formally hired Crandall in April 2017, Petitioners did not know until Crandall's deposition that Crandall had a consulting arrangement of some sort with G4S in November 2016, long before Crandall's formal employment with G4S began in April 2017. Petitioners found this fact to be particularly illuminating and troubling given Crandall's non-compete and confidentiality obligations in her employment agreement that survived her

termination, and Crandall was reminded of those obligations upon her termination. Of course, Petitioners do not as of now know any further details of this consulting arrangement because G4S has refused to produce further documents.

After Crandall's deposition, the parties proceeded with other depositions in fall 2019 and continued working through discovery matters. Having learned about Crandall consulting with G4S so soon after her termination from 4Demand, Petitioners' counsel reached out to G4S's counsel on October 28, 2019, specifically asking to meet and confer regarding G4S's prior objections to request no. 1. A true and correct copy of the October 28, 2019, email is attached as Exhibit 3. After a follow-up email on November 4, 2019, G4S's counsel answered on November 5, 2019, indicating he was currently busy with TRO matters. Petitioners' counsel answered on November 7, 2019, asking for a time to speak to meet and confer. Petitioners' counsel emailed again on November 18, 2019, but received no response. A true and correct copy of the November 2019 emails are attached as Exhibit 4.

Petitioners' counsel then sent a letter to G4S's counsel on December 30, 2019, asking to meet and confer about request no. 1. A true and correct copy of the December 30, 2019, letter is attached as Exhibit 5. Notably, the letter states "[w]e believe it is in the parties and G4S' best interests to avoid any motion practice with respect to this subpoena, especially when we are only seeking to revisit one request for documents related to communications with a single person, Ms. Crandall." *Id.* This letter succeeded in getting G4S's counsel's attention.

Next, counsel for Petitioners and G4S held a telephone meet and confer conference on January 7, 2020. During this conference, Petitioners' counsel advised G4S's counsel that not only do Petitioners only wish to revisit request no. 1 and no other requests, but Petitioners are willing to revise and narrow the scope of request no. 1 to lessen the burden imposed on G4S.

After the conference, Petitioners' counsel emailed G4S's counsel confirming the details of the conversation. A true and correct copy of the January 7, 2020, email is attached as Exhibit 6. As explained during the conversation and confirmed in the follow-up email, Petitioners agreed to revise request no. 1 to seek only the following documents: "Communications between Shelliene D. Crandall, on the one hand, and anyone from G4S, on the other hand, from April 1, 2016, until April 14, 2017." *Id.* Petitioners also provided to G4S a list of email addresses that Crandall used during the relevant time period to assist G4S in searching for responsive documents. *Id.*

G4S's counsel represented he would provide a response regarding G4S's position to the revised request no. 1 within one week. He did not. Petitioners' counsel followed up on January 15, 2020, and G4S's counsel responded that day stating he had spoken with G4S and anticipated having a final answer within a few days. But counsel provided no final answer in the following few days, and counsel also provided no final answer even after Petitioners' counsel again followed up on January 22, 2020.

On January 30, 2020, Petitioners renewed their Subpoena to G4S. This was done as a formality to capture the new information learned about Crandall's consulting with G4S, not to cause confusion or waive prior discussions related to the Subpoena, but simply to trigger discussions with G4S.[1] Counsel for G4S responded on February 18, 2020, indicating a willingness to discuss the Subpoena further. Counsel for Petitioners and G4S then engaged in a series of emails in the last few weeks of February trying to find a time for another meet and confer telephone conference. Counsel were not able to find a mutually agreeable time, in part due to Petitioners' counsel being heavily preoccupied with preparing for and defending Monica J. Breslow's (a party-defendant) deposition in the Crandall Matter on February 26, 2020.

---

[1] For ease of reference, Petitioners refer to the Subpoena as encompassing both subpoenas Petitioners issued to G4S.

As a last ditch effort to get a clear answer from G4S's counsel on G4S's position, Petitioners' counsel again emailed G4S's counsel on March 20, 2020. A true and correct copy of the March 20, 2020, email is attached as Exhibit 7. Petitioners' counsel reiterated that Petitioners were only seeking documents responsive to the narrower, revised request no. 1 memorialized in the January 7, 2020, email following the telephone meet and confer conference. *Id.* Still unsure whether G4S decided to stand on its objections and not respond to the revised request no. 1, Petitioners' counsel simply asked G4S's counsel to "please confirm that G4S is objecting to the revised document request below and will not undertake to produce documents?" *Id.*

The sporadic communications with G4S's counsel demonstrate G4S's counsel can be called to attention quickly if a communication expresses actual implications for his client. For example, the December 30, 2019, letter (Ex. 5) mentioned potential motion practice (though cautioning against it), and G4S's counsel responded right after New Years. For the March 20, 2020, email, Petitioners assumed there may be some delay in responding to this email given the varying and unpredictable repercussions of the coronavirus on businesses and individuals. Yet, nearly three weeks have passed, and as of the date of the filing of this Motion to Compel, G4S's counsel has not responded to the March 20, 2020, email. Given G4S's counsel's track record, Petitioners do not expect a response at this point.

Now, even after the meet and confer telephone conference on January 7, 2020, and the emails thereafter indicating a willingness to talk, Petitioners have received no clear answer from G4S's counsel about whether G4S will undertake to produce documents responsive to the revised request no. 1. As a result, Petitioners now reasonably assume G4S is standing on its objections to the original request no. 1 and will not produce any further documents. Therefore, Petitioners' only recourse is to file the instant Motion to Compel and seek court intervention.

## **LEGAL STANDARD**

"Generally speaking, a Rule 45 subpoena is a discovery vehicle to be used against non-parties to, among other things, obtain documents relevant to a pending lawsuit." *Sakhil Ctr. at Doral Condo. Ass'n, Inc. v. Hanover Ins. Co.*, No. 18-21659-CIV, 2019 WL 7881626, at *1 (S.D. Fla. Mar. 21, 2019); *see also* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents[.]"). As G4S acknowledged in its objections and responses (Ex. 2), G4S is a non-party to the Crandall Matter, and so the Subpoena was the proper discovery vehicle. Likewise, whereas G4S timely served objections to the Subpoena under Rule 45(d)(2)(B), Petitioners now move this Court under Rule 45(d)(2)(B)(i) for an order compelling the production of documents from G4S.

The scope of discovery that a party may seek from a non-party under a Rule 45 subpoena is identical to the scope of discovery that a party may seek from a party generally under Rule 26. This Court has held "a party may use a Rule 45 subpoena to 'obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.'" *Madeline L.L.C. v. Street*, No. 09-80705-MC, 2009 WL 1563526, at *1 (S.D. Fla. June 3, 2009) (quoting Fed. R. Civ. P. 26(b)(1)). This holding is based on the understanding that "Rule 45 must be read in conjunction with Federal Rule of Civil Procedure 26, because the latter rule 'clearly defines the scope of discovery for all discovery devices.'" *Id.* (quoting 9A Wright & Miller, *Federal Practice and Procedure*, Civil 3d § 2452 (3d ed. 2008)); *see also Sakhil*, 2019 WL 7881626, at *1 ("A party to federal lawsuit may issue, for example, a subpoena to a nonparty, compelling the production of documents relevant to any of the parties' claims or defenses.") (comparing Fed. R. Civ. P. 45 with Fed. R. Civ. P. 26(b)(1)); *Klein-Becker, usa, LLC v. Allergan, Inc.*, No. 05-81155-CIV, 2006 WL 8433625, at *5 (S.D. Fla. May 25, 2006) (noting "a review of the advisory committee

notes to the 1991 Amendments to Rule 45 shows that the scope of a Rule 45 subpoena is the same as the scope of discovery under Rule 26.") (footnote omitted).

Finally, a decision on a motion to compel discovery is committed to the discretion of this Court. *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984).

## **ARGUMENT**

This Court should compel G4S to produce documents responsive to Petitioners' revised request no. 1, as stated in the January 7, 2020, email (Ex. 6), because the request seeks information that is relevant to Petitioners' claims and defenses in the Crandall Matter and that is not unduly burdensome or expensive for G4S.

As a preliminary matter, Petitioners also seek a slight adjustment to the time period referenced in the January 7, 2020, email, which asked for communications from April 1, 2016, until April 14, 2017. Ex. 6. The key facts related to G4S discussed above, *supra p. 3*, reference the Breslows' belief that Crandall was exploring employment or consulting opportunities with G4S around the same time the Breslows and Crandall first met in February 2016. As such, Petitioners request that G4S produce communications from *January 1, 2016*, until April 14, 2017, to capture any such communications between Crandall and G4S as described. This three-month extension does not alter the relevancy or burden arguments with respect to Petitioners' document request, as discussed below.

As to relevancy, Petitioners learned a slew of facts about Crandall's potential dealings with G4S, including that Crandall: (1) may have been exploring consulting or employment opportunities with G4S around the time Crandall met the Breslows in February 2016; (2) had numerous communications with G4S while employed by 4Demand; (3) potentially diverted business with G4S away from 4Demand; (4) potentially used her time while employed with

- 10 -

4Demand to set up her own future arrangements with G4S; (5) began consulting with G4S in November 2016 roughly a month after her termination on September 30, 2016; and (6) became officially employed by G4S in April 2017. These facts, if proven true by the needed discovery from G4S, would likely constitute violations of the restrictive covenants in Crandall's employment agreement and potential breaches of Crandall's fiduciary duties as an officer of 4Demand. Therefore, these facts directly bear on, and are thus relevant to, Petitioners' claims and defenses in the Crandall Matter, which include breach of contract and breach of fiduciary duty. Knowing the importance of developing these facts in discovery, Petitioners issued the Subpoena to G4S to obtain whatever documents exist to flesh out these facts for the record. And as stated in the January 7, 2020, email, and as slightly revised now, Petitioners request the following documents: "Communications between Shelliene D. Crandall, on the one hand, and anyone from G4S, on the other hand, from January 1, 2016, until April 14, 2017." Such communications would in all likelihood contain information that would flesh out the relevant facts described above.

If G4S disputes the relevancy of the requested documents, then G4S bears "the burden of showing that the requested discovery is not relevant to the issues in the case[.]" *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, No. 01-0392-CIV-GOLD, 2001 WL 34079319, at *2 (S.D. Fla. Nov. 1, 2001) (citation omitted). Petitioners may not have an unfettered right to information from G4S, but G4S cannot meet its burden of demonstrating that the information Petitioners seek has no relation to the claims and defenses in the Crandall Matter. Although Rule 26(b)(1) allows for discovery regarding matters "relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), "rather than merely the subject matter, in the present dispute the matters in question relate directly to the claims and defenses of the parties." *Dunkin' Donuts*, 2001 WL 34079319, at *2.

Because the information sought directly relates and is relevant to their claims and defenses, G4S's responses should "live up to the open and obvious discovery demanded by the Federal Rules[.]" *Madeline*, 2009 WL 1563526, at *1 (citation omitted).

Not only do Petitioners seek relevant documents, but Petitioners' revised request no. 1 is eminently reasonable and does not impose an undue burden or expense on G4S. In the January 7, 2020, email, Petitioners' counsel provided a list of email addresses that Crandall used during the relevant time period to assist G4S in searching for responsive documents. Ex. 6. The revised request no. 1 seeks communications between Crandall and anyone working for G4S for the span of only 15 months. *Id.* This is a straightforward document request that is very common in civil litigation, especially for a company the size of G4S. The request is clearly limited in scope, does not demand an overly lengthy timeframe, and does not seek complex documents that are not kept in the ordinary course of business. If G4S disagrees, G4S should explain in detail why searching for these communications would involve searching for documents not kept in the ordinary course of business. Moreover, where a subpoena calls for the production of documents that would normally be kept in the ordinary course of business, this Court has found undue burden or expense objections unpersuasive, as shown by this example:

> The documents requested—personnel files of two employees—are the type of documents that would normally be kept together in the ordinary course of business. Plaintiff is not seeking a compilation of data, or reports from numerous sources, or from several different locations. It is reasonable to expect that MDCR maintains its personnel files together and that they could be retrieved quickly and efficiently. It is difficult to understand how it could possibly take twenty-two administrative hours to go to a file cabinet, identify and remove the files of the two employees, and run those files through the copy machine. . . . Moreover, copying 620 pages, of what is likely standard size paper, is a relatively routine and inexpensive undertaking. Accordingly, I find that the production of the requested documents would not impose an undue burden or expense on MDCR. Therefore, MDCR must produce the documents.

*Stringer v. Ryan*, No. 08-21877-CIV-COOKE, 2009 WL 3644360, at *2 (S.D. Fla. Oct. 30, 2009) (footnote omitted). Similarly here, this Court should find the production of the requested communications in Petitioners' revised request no. 1, with dates from January 1, 2016, until April 14, 2017, would not impose an undue burden or expense on G4S.

## CONCLUSION

This Court should exercise its discretion and find the interests of open discovery mandate that G4S undertake to produce documents responsive to Petitioners' request for documents. Petitioners seek documents that are relevant to Petitioners' claims and defenses in the Crandall Matter and that are not unduly burdensome or expensive for G4S to locate and produce. For these reasons, the Court should grant Petitioners' Motion to Compel.

WHEREFORE, Petitioners, 4Demand, LLC, Monica J. Breslow, and Robert Breslow, respectfully request this Court enter an Order granting Petitioners the following relief:

A. Granting Petitioners' Motion to Compel;

B. Ordering G4S Secure Solutions, Inc. to produce documents responsive to Petitioners' revised request for documents—*communications between Shelliene D. Crandall, on the one hand, and anyone from G4S, on the other hand, from January 1, 2016, until April 14, 2017*—on a date certain but no later than three (3) weeks from the date the Court issues the Order;

C. Ordering G4S Secure Solutions, Inc., counsel for G4S Secure Solutions, Inc., or both to pay Petitioners' reasonable expenses incurred in making this Motion to Compel, including attorneys' fees, pursuant to Fed. R. Civ. P. 37(a)(5)(A); and

D. Granting Petitioners such further and additional relief this Court deems just and proper.

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF CIVIL PROCEDURE 37(a)(1) AND SOUTHERN DISTRICT OF FLORIDA LOCAL RULE 7.1(a)(3)

Pursuant to Petitioners' obligations under Rule 37(a)(1) and Local Rule 7.1(a)(3), Petitioners certify that Petitioners' counsel has in good faith conferred with non-party G4S's counsel, which is the non-party who failed to make discovery and who may be affected by the relief sought in the instant Motion to Compel, in a good faith effort to obtain such discovery and to resolve the issues raised in the instant Motion to Compel without court action but have been unable to do so. The background section above describes in detail the specific times and manner of Petitioners' counsel's good faith efforts to confer with G4S's counsel.

Dated:  April 14, 2020

Respectfully submitted,

4DEMAND, LLC, MONICA J. BRESLOW and ROBERT BRESLOW

By: */s/ Heather L. Ries*
       One of Their Attorneys

Heather L. Ries
Florida Bar No. 581933
FOX ROTHSCHILD LLP
777 S. Flagler Drive
Suite 1700 West Tower
West Palm Beach, FL 33401
(561) 835-9600
HRies@foxrothschild.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that she caused a copy of the foregoing **Petitioners' Motion to Compel Compliance with Subpoena to Produce Documents by Respondent G4S Secure Solutions, Inc. and Incorporated Memorandum of Law** to be served on April 14, 2020, via email and U.S. Mail to the following persons identified below:

| | |
|---|---|
| Christopher C. Marquardt<br>ALSTON & BIRD LLP<br>1201 West Peachtree Street<br>Atlanta, GA 30309<br>Chris.Marquardt@alston.com<br><br>*Counsel for Respondent G4S Secure Solutions, Inc.* | Norman J. Lerum<br>NORMAN J. LERUM, P.C.<br>55 West Monroe Street, Suite 2455<br>Chicago, IL 60603<br>njlerum@lerumlawfirm.com<br><br>*Counsel for Plaintiff Shelliene D. Crandall in Related Action, Case No. 17-CV-04185 (N.D. Illinois)* |

                                           */s/ Heather L. Ries*